IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04 11849 NG

| | |
|---|---|
| THE TURKISH TOWEL COMPANY, INC., a Massachusetts Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> DEBORAH CONNOLLY & ASSOCIATES, LLC., a New York Limited Liability Corporation, <br><br> Defendant. | Civil Action No. <br><br> Jury Trial Requested |

**COMPLAINT AND JURY DEMAND**

Plaintiff, by its attorneys, Herbert L. Bello and Michael A. Paris, for its Complaint against the Defendant, states and alleges as follows:

**STATEMENT OF JURISDICTION**

1. This is a civil action for Declaratory relief arising out of a dispute and controversy between Plaintiff and the Defendant relating to Copyright law. This Court has jurisdiction under Title 28 United States Code, §§ 1331 and 1338(a) which gives the District Courts jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights, and trademarks, and this Court also has jurisdiction under Title 28, United States Code, §§ 2201 and 2202 relating to Declaratory Relief.

2. Venue is proper in this judicial district pursuant to Title 28, United States Code, §1391(c) because Plaintiff, The Turkish Towel Company, Inc. (hereinafter referred to as "Turkish Towel") is a Massachusetts corporation conducting business in Massachusetts and it sells to customers in Massachusetts as does the Defendant.

1

3.  Upon information and belief, the Defendant, Deborah Connolly & Associates LLC (hereinafter referred to as "DCA") is a Limited Liability Corporation incorporated in New York, with a usual place of business in New York.

4.  Turkish Towel is in the business of developing, marketing, and selling to retailers in the United States towels made in Turkey exclusively for Turkish Towel.

5.  Turkish Towel has been developing, marketing, and selling to retailers in the United States towels made in Turkey since 1999.

6.  In the year 2000, Turkish Towel hired DCA to develop towel designs for Turkish Towel, market towels produced by Turkish Towel and enlarge the customer base for Turkish Towel. DCA was to be paid a commission based upon sales. The foregoing effort was agreed to by the parties by means of an oral agreement between Turkish Towel and DCA at the commencement of DCA's employment with Turkish Towel.

7.  On or about June 2001, in addition to paying commissions, at the request of DCA, Turkish Towel paid DCA $2,500 per month for design and development of towels to be sold for Turkish Towel by DCA. Turkish Towel continued to pay DCA this $2,500 stipend for approximately eleven months.

8.  On or about May 2002, at the request of DCA, Turkish Towel increased this monthly stipend to $12,000 per month. Of this sum, $2,000 was paid to DCA to enable DCA to perform these design and development efforts in New York by purchasing sophisticated computer equipment and a high-powered color copier/scanner for use by DCA to further Turkish Towel's business. Of the remaining $10,000 monthly payment, $4,000 was to be used by DCA to pay the salary of a developer in DCA's employ who would be dedicated exclusively to work only for Turkish Towel and $6,000 was to be used by DCA to maintain an office and showroom and pay a designer for the benefit of Turkish Towel so that DCA could market and promote Turkish Towel's products and increase Turkish Towel's customer base. In addition, Turkish Towel purchased point carré software for DCA to use in developing towels for Turkish Towel.

9.  Thereafter and until termination of the relationship, Turkish Towel paid DCA $10,000 monthly, $4,000 of which was to be used by DCA to pay the salary of a developer in DCA's employ who would be dedicated exclusively to work only for Turkish Towel and $6,000 was to be used by DCA to maintain an office and showroom and pay a designer for the benefit of Turkish Towel so that DCA could market and promote Turkish Towel's products and increase Turkish Towel's customer base. In addition, Turkish Towel paid Federal Express approximately $10,000 to $15,000 per year for Federal Express shipping charges incurred by DCA relating to Turkish Towel. DCA was at all times acting as Turkish Towel's agent.

10. DCA would obtain orders from retailers and send purchase orders to Turkish Towel or affiliates or associates of Turkish Towel for the benefit of Turkish Towel to be filled from a factory in Turkey. All orders were between Turkish Towel or affiliates or associates of Turkish Towel for the benefit of Turkish Towel and the customer. None of these orders was made out to DCA. Turkish Towel or affiliates or associates of Turkish Towel for the benefit of Turkish Towel would invoice the customer. DCA did not invoice the customer for these orders. Payment would be made to Turkish Towel or affiliates or associates of Turkish Towel for the benefit of Turkish Towel. No payments were made to DCA by the customer for these orders. Turkish Towel would pay DCA a commission based on the amount of the sales. The commission paid to DCA was 7 percent, which was well above the industry standard of 3 percent. The higher than average commission was paid to DCA because DCA was doing more than just selling Turkish Towel's products. DCA was promoting Turkish Towel and increasing Turkish Towel's customer base for Turkish Towel.

11. Also, in the scope of DCA's employment, with the aid of the towel developer exclusively devoted to and paid for by Turkish Towel and towel designers in-part paid for by Turkish Towel, DCA would create and submit towel designs to Turkish Towel or affiliates or associates of Turkish Towel on behalf of Turkish Towel. Turkish Towel or affiliates or associates of Turkish Towel on behalf of Turkish Towel would translate, modify and manufacture towel samples at a factory in Turkey for Turkish Towel. In its sole discretion, Turkish Towel or affiliates or associates of Turkish Towel on behalf of Turkish Towel would decide whether production of the towels bearing the submitted designs would be cost effective. Turkish Towel would provide the sample towels with the selected designs to DCA for use in promoting and marketing Turkish Towel's products and to increase sales of Turkish Towel's products and develop a larger customer base for Turkish Towel. Turkish Towel maintains that these sample towels and designs are its sole and exclusive property. The designs and sample towels were to be used exclusively for the benefit of Turkish Towel by DCA in the performance of DCA's efforts enumerated in Paragraph 6 hereof.

12. Turkish Towel and DCA have severed their business relationship as of July 2004.

13. DCA has sent a letter through its attorneys threatening Turkish Towel with legal action if they try to sell towels designed by DCA for Turkish Towel and with DCA's copyright notice on them and also claiming some unknown "common law" rights. DCA is threatening legal action if Turkish Towel sells these towels. By this letter DCA is also saying that they will continue to sell towels designed during the relationship. A copy of the letter is attached hereto and marked Exhibit A.

14. Upon information and belief, DCA has contacted a towel manufacturer in Turkey and provided it with sample towels originally made and/or designed for Turkish Towel

in the scope of DCA's employment. Turkish Towel maintains that it owns these sample towels and that DCA cannot use them or have them manufactured by others. Turkish Towel believes that any unauthorized use of these sample towels by DCA is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of DCA with Turkish Towel, or as to the origin, sponsorship, or approval of DCA's goods or commercial activities by Turkish Towel. Turkish Towel believes that it is likely to be damaged by such acts of DCA. Such acts by DCA are in violation of Section 43(a) of the Lanham Act, Title 15 United States Code §1125.

15. It is Turkish Towel's position that DCA worked for Turkish Towel because Turkish Towel financed the towel design and development effort of DCA and the resulting towel designs are works for hire that were created within the scope of DCA's employment. Turkish Towel is the sole and exclusive owner of the towel designs.

16. The designs provided by DCA as works for hire while in the employ of Turkish Towel were translated, modified and incorporated into towel samples by Turkish Towel under Turkish Towels's control. It is Turkish Towel's position that all the towel samples that DCA received from Turkish Towel for use by DCA in the marketing of towels produced by Turkish Towel and enlarging the customer base of Turkish Towel are Turkish Towel's property. DCA cannot use these designs or any sample towels provided to it by Turkish Towel. These designs that were created as works for hire are the sole and exclusive property of Turkish Towel. Likewise, the towel samples produced by Turkish Towel are the sole and exclusive property of Turkish Towel. All artwork for designs created as works for hire by DCA and all sample towels provided to DCA by Turkish Towel must be returned to Turkish Towel.

17. The sophisticated computer equipment, point carré software, and a high-powered color copier/scanner purchased by Turkish Towel for use by DCA at DCA's facilities in New York while DCA was in the employ of Turkish Towel must be returned to Turkish Towel.

18. There is substantial and continuing justiciable controversy between plaintiff and defendant as to defendant's right to threaten or maintain a suit for infringement of DCA's rights.

19. A real controversy exists as both sides are claiming ownership of these towel designs and Turkish Towel is claiming ownership of any and all sample towels and towels that were provided to DCA by Turkish Towel or affiliates or associates of Turkish Towel on behalf of Turkish Towel while DCA was in the employ of Turkish Towel.

20. DCA has threatened legal action against Turkish Towel and DCA is trying to

manufacture towels using Turkish Towel's towel samples without Turkish Towel's consent. DCA is also trying to interfere with existing contracts between Turkish Towel and its retailers and thus a real controversy exists. Both parties desire to sell these towels immediately to retailers and thus time is of the essence in resolving this matter.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff respectfully requests that the Court enter an Order as follows:

1. Entry of judgment that the defendant is without right or authority to threaten or to maintain suit against the plaintiff or its customers for alleged infringement of DCA's alleged rights; that any alleged rights of DCA are not infringed by the plaintiff because of the making, using, selling, offering to sell, importing or using of any towel designs made or sold or used by the plaintiff and/or its customers;

2. Entry of a permanent injunction enjoining defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it who receive actual notice thereof from initiating infringement litigation and from threatening plaintiff or any of its customers, dealers, agents, servants, or employees, or any prospective or present sellers, dealers, or users of plaintiff's towels or products, with infringement litigation or charging any of them either verbally or in writing with infringement of any alleged rights of DCA because of the manufacture, marketing, use or selling or offering for sale or importing towels or products designed and developed by DCA for Turkish Towel;

3. A judgment declaring that all towels designed, developed, marketed and sold by DCA for Turkish Towel during their relationship are the sole and exclusive property of Turkish Towel and cannot be used, sold or manufactured by DCA;

4. A judgment declaring that all sample towels produced by or for Turkish Towel in the possession of DCA be returned to Turkish Towel;

5. A judgment declaring that the sophisticated computer equipment, point carré software, and high-powered color copier/scanner purchased by Turkish Towel for use by DCA at DCA's facilities in New York while DCA was in the employ of Turkish Towel is the property of Turkish Towel and such equipment and software be returned to Turkish Towel;

6.  A judgment declaring that all artwork for designs created as a work for hire by DCA is the property of Turkish Towel and that such artwork be returned to Turkish Towel;

7.  A judgment declaring that Turkish Towel is the owner of all designs created by DCA within the scope of DCA's employment with Turkish Towel;

8.  A judgment declaring that DCA has no copyright interest in any of the towel designs created by DCA within the scope of its employment with Turkish Towel;

9.  For an award of attorneys' fees and Plaintiff's costs incurred in this action;

10. For such other and further relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted this 25th day of August 2004.

The Turkish Towel Company, Inc., by its attorneys

_____
Herbert L. Bello, BBO# 036620
One Hollis Street
Wellesley, Massachusetts 02482
Telephone: (781) 235-4457


_____
Michael A. Paris, BBO# 389770
77 Franklin Street
Boston, Massachusetts 02110
Telephone (617) 542-5000

38121TT4.com.wpd

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) The Turkish Towel Company, Inc. v. Deborah Connolly & Associates, LLC.

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   ___ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ___ II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.
            *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

   _X_ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

   ___ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

   ___ V.   150, 152, 153.

   04 11849 NG

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)).

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?   YES ☐   NO ☒

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST?  (SEE 28 USC 2403)   YES ☐   NO ☒
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?   YES ☐   NO ☒

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC 2284?   YES ☐   NO ☒

7. DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS (WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C)).   YES ☐   NO ☒
   OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? - (SEE LOCAL RULE 40.1(D)).   YES ☐   NO ☒

8. DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF THE DISTRICT?   YES ☐   NO ☒
   (a)   IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE? _____

9. IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE? Eastern

10. IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE
    CENTRAL SECTION:  YES ☐  NO ☒     OR WESTERN SECTION:  YES ☐  NO ☒

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME    Herbert L. Bello
ADDRESS            One Hollis Street, Wellesley, MA 02482
TELEPHONE NO.      (781) 235-4457

(Categfrm.rev - 3/97)

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
The Turkish Towel Company, Inc.

## DEFENDANTS
Deborah Connolly & Associates, LLC.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Essex
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: Manhattan
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Herbert L. Bello
One Hollis Street
Wellesley, MA 02482
(781) 235-4457

ATTORNEYS (IF KNOWN)
James R. Steffen
Faegre & Benson
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 130 Miller Act | | ☐ 365 Personal Injury — Product Liability | | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | | ☐ 640 R.R. & Truck | | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 875 Customer Challenge 12 USC 3410 |
| | | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | | | ☐ 891 Agricultural Acts |
| ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | HABEAS CORPUS: | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
Declaratory Judgment   Title 28, United States Code, Sections 2201 and 2202

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE: August 25, 2004

SIGNATURE OF ATTORNEY OF RECORD: /s/ Herbert L. Bello   Herbert L. Bello  BBO# 036620

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____